May it please the Court, Xander Lopez of the Federal Defenders in San Diego on behalf of Mr. George Guadalupe Rios. I'd like to reserve two minutes of my time for rebuttal. The imposition of a 13-month term of imprisonment for failing to report to probation must be vacated. Mr. Rios' sentence was based on facts, not alleging the indictment, not found by a jury, and not found beyond a reasonable doubt in violation of Booker and Apprendi. The current supervised release revocation regime is unconstitutional, since it impermissibly allows a judge and not a jury to make a factual fact-finding under a lower standard of proof in order to sentence a defendant to an additional term of imprisonment not justified by the or jury verdict. Let's say the public defender in the Southern District of California comes up with more than its share of creative and bold arguments. The last time I was led to accept one of those arguments was in Navarro Vargas. And you know what happened to me there. I'm completely convinced that this is appropriate. No, no, I'm not commenting on this particular argument, but I must say that your office does come up with its fair share and then creative arguments. I think it's highly commendable that you take this so seriously for your clients. Please go ahead. Well, Apprendi makes it clear that any fact. I mean, you would you would change the face of the way probation revocation hearings are conducted. Supervised release revocation. Yeah, that's critical. They keep changing the terms on us. Right. I mean, every time somebody is found dirty on a drug test or anything like that, you'd have a jury. Well, that's an issue for Congress to decide. No, no, I'm not. If that's what the Constitution requires, you know, the Supreme Court has required worse. But that's what that's implication. So this procedure, rather than being sort of something where the court supervises the defendant, you know, somewhat similar procedure, you have to have a jury trial every time. Right. Well, the penalties are serious. Mr. It's alleged that Mr. has failed to report to probation and he was sentenced to 13 months imprisonment when his original sentence was only 24 months. So the implications are serious. And that's why it's a very important issue. Well, counsel, though, isn't the district court limited in its resentencing after a supervised release violation to only that period of time, even in the outside, assuming they depart from the advisory guidelines upward to the maximum statutory term they could have been sentenced to in the first place? Well, after Blakely, that's not necessarily true because the – Well, Blakely gives the district court the opportunity, if they make the appropriate findings without even a motion from the government, to go up to the statutory maximum. Right. And if somebody's supervised release is revoked, the maximum that a district court can resentence the person to is the remaining balance of the term up to their statutory maximum. So in effect, this is just part of the original conviction. They've already been found guilty by the jury and the court could have sentenced them in the first instance to the statutory maximum. The bottom line is, Your Honor, there's an additional fact. What's that? That additional fact, the revocation fact. That revocation fact was not justified by the jury verdict and was not justified by the admission of guilt. The judge made an additional finding not supported by that jury verdict and not supported by the admission of guilt. That implicates, Blakely, the additional fact. And that fact must be – Right. And I think – And to follow up on Judge Ezra's question, the most he could get would be what he would have gotten had – what he could have gotten in the original sentencing based on the original findings, either by the jury or by his pleading guilty, because he can't exceed the statutory maximum. Right. And it's – again, I'd like to state it's not the statutory maximum. It's the maximum allowed by the findings of the jury or the admission of guilt. In this case, the maximum was 24 months. That's what Mr. Rios' sentence was justified up to. And did he serve any time up front? He served 24 months imprisonment. The additional – The statutory maximum is 5 years. So 24 plus 13 is not quite 5 years, right? Right. But your argument is that it's not the statutory maximum anymore that guides our upper ceiling. Right. It's what – the sentence that could have been imposed based on the guilty plea or the guilty verdict. Right. That's what – that's your argument. That's correct. And Booker emphasizes that. Booker emphasizes it's no longer the statutory maximum. It's the maximum permissible by the findings in the jury verdict or the admission of guilt. Counsel, how is your argument affected by our case law that indicates that the Chapter 7 supervisory lease policy statements have always been advisory? I don't think that changes it at all. Why not? Because the Sixth Amendment is still implicated. There's a finding that wasn't met by these constitutional protections set forth in Apprendi. Well, the only reason there was a Sixth Amendment violation was because the findings were made in a mandatory sentencing. I think in Booker there was two holdings. In Booker. Go ahead. There was a holding that, one, the guidelines did implicate the Sixth Amendment. And, two, how are we going to fix it? The remedial holding. And the remedial holding was to take out the mandatory phrases. But in this case, the – you can't do that because – But they were never mandatory. That's the point. Right. But the thing is, the statute itself, the congressional intent is clear, that the defendant doesn't have a right to a jury and the defendant doesn't have a right to an indictment and the defendant doesn't have the right to proof beyond a reasonable doubt. It's there. It's in the statute. It's unambiguous. That can't be fixed. That's why it has to be stricken and that's why it's unconstitutional. It can't be fixed like it was in Booker. In order to accept your argument, this Court, I think, at least from my perspective, would have to find that the violation of supervised release was a separate and distinct crime, as alleged, from the original offense and unconnected to it. And there's a lot of authority out there for the proposition that a violation of supervised release is in effect simply an extension of the original crime. Right. But I think – Because at the time of sentencing, the Court is required, if it's going to impose supervised release, to advise the defendant of the supervised release, of the consequences of violation of supervised release and to put them under essentially a court order to comply. So a violation of supervised release is very similar to someone's violating a court order. And I understand your position, Your Honor, but I think there's an important distinction. Well, it's not my position. That's case law. Right. But I think there's a very important distinction and the distinction is that the jury verdict or the guilty plea did allow the imposition of the supervised release. That's true. But it doesn't allow the imposition of custody for violations of that supervised release. That's based on another fact. And I think the case law that Your Honor is talking about and that the government heavily relies on is Morrissey v. Gagnon, which had to do with parole and probation revocation, which, unlike supervised release revocation, doesn't impose an additional term of imprisonment. It goes back to the date of the original sentence. Say, in Mr. Rios' case, he was sentenced to 24 months. He did 12 months, released on parole. He revoked parole. He goes back to his original sentence. It was permissible to sentence him to up to 24 months. So he does the additional 12 months. There's no apparently violation. But supervised release revocation is different. There's an additional term of imprisonment. And I think that is that's critical, because, unfortunately, It really depends on how you view it. I mean, you could view a two-year sentence followed by a three-year supervised release as being a five-year sentence with three to be served on the outside if you behave yourself. Right. That's another way of conceptualizing it. Right. And I think that would make it just like parole. Right. Well, we have, we can't, Booker, Apprendi, Ring, all make clear that we can't focus too much on the formalities. We have to focus on the effect. But that doesn't help you. That hurts you. Because the formalities are that it's a two-year prison sentence, three years of supervised release. That's formally what it looks like. But we say, well, we don't look at the formalities. What it really is, it's a five-year sentence, two to be served on the inside, three to be served on the outside, if you behave yourself. If you don't behave yourself, then you go back and you serve the rest of your five-year sentence on the inside. And that's based on a new fact. Just like parole. We would not distinguish parole. We would say parole is different because all that happens is you're going back to serve the remainder of your sentence. That hinges on a new fact, too. People don't get sent, don't have their parole revoked for behaving themselves. Something happened on the outside. They can't just be yanked back to prison. So they really are not conceptually any different. I think the distinction is that there's no additional term of imprisonment imposed for revoking parole. Well, again, that depends on how you conceptualize it. Well, you have a – are you – if you have a – you see, you keep saying there's a new fact, there's a new this. But at the time that the court imposes supervised release, let's say a very typical condition which is violated is drug use. The court tells the individual at that time you may not use controlled substances and so on and so forth. In order to violate supervised release then, the individual must in fact have done something that violates a condition to which he or she was originally – had imposed upon them. You can't revoke supervised release. A district court couldn't because somebody did something that may have been wrong but was not part of their original conditions of supervised release. That would be some separate offense or some separate issue. You couldn't haul them back in. For instance, if you thought it was a bad idea that they crossed the border into Mexico and you were in San Diego, but it wasn't a condition to supervised release that they not leave San Diego County and go into Mexico, you couldn't revoke their supervised release for going into Mexico. But you certainly could if they were using drugs or they got caught bringing drugs back across the border from Mexico because that would be a violation of two conditions of their supervised release, the drugs and also a violation of a subsequent – or commission of a subsequent crime. So these are not really new things. These are things that have to be imposed at the time of the sentence and then, as Judge Kosinski just suggested might be the case, they're really basically then just coming back into the original – what was part of the original sentence. I'd like to make a couple of points in regards to that. First, you – as an example, you gave drug testing or testing dirty. And that's – if you test dirty, that's mandatory. You have – it's mandatory to impose a sentence of custody. So as to Your Honor's question regarding the mandatory nature, that's something that's distinguishable. And two, although the condition is set at the time of the sentencing, it doesn't change the fact that there's a new fact and that has to be determined whether, in fact, they violated that condition. I think we understand that point. And you're way over your time. Why don't we hear from the government? Okay. Good morning, Your Honors. May it please the Court. Sanjay Mandari of the United States. Your Honors, the United States v. Booker left undisturbed the supervised release regime. Well, but they keep extending apprendice, so, you know, it's – so why isn't this the next thing? Sure. For several reasons, Your Honor. Several of the justices seem enamored with Joyce. Several of the justices seem enamored with Joyce. Certainly, Your Honor. And this is certainly a situation where you've got an event in the real world that has to be determined and on which hinges whether or not this person is going to go home and sleep in his own bed or he's going to go to prison. Yes, Your Honor. Everything you say is accurate. Why is this just like apprendi? And, again, it is – there are several reasons why apprendi, why Booker left this area undisturbed. One good reason was always best. There are very well settled bodies of case law in terms of challenges to the supervised release regime in the area of apprendi. That doesn't help you much because apprendi itself was a departure from established bodies of case law. Your Honor, this Court has addressed the supervised release. In fact, Your Honor has addressed the supervised release regime and the paradigm, specifically the paradigm that Your Honor put forth today. How does one conceptualize supervised release? Is it part of the original sentence? Therefore, is it part of the – is it the statutory maximum to which the defendant was exposed based upon the full Sixth Amendment proceeding? Or is it something else? Is it new? And in a variety of contexts, the ex post facto clause challenges, double jeopardy challenges, apprendi challenges, this Court and the Supreme Court have said, no, it's part of the original sentence. It's part of the original statutory maximum. As Judge Ezra pointed out, there is a statutory maximum for the amount of imprisonment that one can serve on supervised release. And so in all of those bodies of case law, it has been established the supervised release is part of the original sentence, not something additional. But counsel, didn't Booker educate us to the fact that the statutory maximum is no longer the ceiling that we're concerned with. We're concerned with the maximum that can be imposed based on the jury's verdict or the guilty plea or the facts admitted by the defendant. So why does it matter what the statutory maximum is? Well, sure. If there was a – if there was an intermediate regime like the sentencing guideline mandatory regime that might be in the middle, that issue, the Booker issue might be presented. But based on a plea of guilty, which is what occurred here, or a finding of guilt after a trial, the defendant faces an advisory guideline regime with respect now, after Booker, with respect to the sentence of imprisonment, and faced always a advisory regime, as Your Honor pointed out, with respect to the supervised release. The Supreme Court, it's based on the existence of these bodies of case law in several different contexts where this Court and the Supreme Court have said it's part of the original sentence. They've addressed virtually an identical challenge and said we don't see a conceptual issue. Given that and given this Court's previous expressed reluctance to extend Booker into areas, particularly where, as here, the Supreme Court itself in Booker took a look at the supervised release statute. Now, we agree that that wasn't directly at issue there. But the Supreme Court in Booker looked at the Sentencing Reform Act in general and they said specifically, they cited to the supervised release statute and they said it looks perfectly valid to us. In light of that, judicial restraint is advisable in terms of extending Booker into an area that would unsettle a variety of bodies of law on which the Supreme Court and this Court have ruled. Kagan. Are you aware of any appellate courts, Federal courts that have addressed this issue? Yes, Your Honor. We cited several in a 28J letter that we provided to the Court. And the three circuit courts that recently addressed this issue are the Second Circuit, the First Circuit, and the Eighth Circuit, all of which found that supervised release is left unaffected by Booker. And we would urge Your Honors to follow the reasoning of those circuits. With respect to the challenge to the hearing itself and the evidence submitted, there were two challenges, both based on a Sixth Amendment Crawford-based challenge to the admissibility of evidence, to proof of whether the proof of defendant's notice of his obligation to report and proof of his failure to report. And as we said in our brief, the first of all, Crawford doesn't apply to supervised release revocation. But secondly, the defendant signed notices that indicated to him, and Your Honor, Your Honors have those, that indicated to him that his – where he was to report was San Diego, the U.S. Probation Office there. He had to do it within 72 hours, there was a telephone number and address provided. Clearly, his signature, if nothing else, establishes that he had notice of those facts. With respect to the testimony of the custodian of records, again, we don't think that Crawford applies. Even if it did apply, the custodian properly testified about a public record-keeping system that is a non-testimonial system. Probation keeps its records for a variety of reasons. Most of those rehabilitative. It was properly found to be non-hearsay by the district court. And on that, I'll submit unless the Court has questions. Thank you. Thank you, Your Honor. Well, you've taken more than your time. I think we understand your position. Thank you. Case is signed. You can submit it. For next year argument in Pusano, this is fine. Thank you.
judges: Canby, Kozinski, Rawlinson